United States District Court
Southern District of Texas
ENTERED
November 22, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| KB HOME LONE STAR INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-5272 |
| | § | |
| EMSER TILE, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

KB Home Lone Star Inc.[1] seeks over $1 million in damages from Emser Tile, LLC for selling allegedly defective tiles that Lone Star installed in new homes it built throughout Texas. (Docket Entry Nos. 1, 25, 29, 53). In its first amended complaint, Lone Star alleges claims for: (1) breach of contract; (2) breach of express warranties; (3) negligence; (4) breach of implied warranty of fitness for a particular purpose; (5) breach of implied warranty of merchantability; (6) equitable indemnification; (7) fraudulent misrepresentation and concealment; (8) breach of contract for failure to indemnify; (9) strict products liability; and (10) attorneys' fees. (Docket Entry No. 25).

Emser Tile moves to dismiss the first amended complaint. (*Compare* Docket Entry No. 28, *with* Docket Entry No. 25). While the motion to dismiss was pending, Lone Star filed two additional amended complaints,[2] removing the claims for equitable indemnification and for fraudulent misrepresentation and concealment, (Docket Entry Nos. 29, 53), and responded, (Docket Entry No. 30). Emser Tile replied. (Docket Entry No. 31).

---

[1] The court refers to "KB Home Lone Star Inc." as "Lone Star."

[2] The court ordered Lone Star to file a third amended complaint to clarify that KB Home Service Company, LLC is not a party. (Docket Entry No. 52).

The motion to dismiss is ready for ruling.[3] Based on the pleadings, the motion, the response, the reply, the record, and the applicable law, the Emser Tile's motion to dismiss, (Docket Entry No. 28), is granted in part and denied in part. The claims for negligence, equitable indemnification, fraudulent misrepresentation and concealment, and strict products liability are dismissed, with prejudice because amendment would be futile. The claim for attorneys' fees is dismissed, without prejudice; Lone Star may move for attorneys' fees, if appropriate, at the conclusion of the case. The implied-warranty claims are dismissed, without prejudice to re-urging if Emser argues that the tile was not supplied under the national supply agreement.

The reasons for these rulings are set out below.

## I. Background[4]

"KB Home Service Company entered into a National Supply Contract with Emser [Tile] for the benefit of Plaintiff KB Home Lone Star, among other KB Home entities and divisions." (Docket Entry No. 53 ¶ 1). KB Home Lone Star alleges that it "is an intended third-party beneficiary under the [c]ontract."[5] (*Id.* ¶ 2). Lone Star "purchased and installed [Emser's] Albero and Uddo tiles in 498 homes in the Houston area, 34 homes in the San Antonio area, and 91 homes

---

[3] The parties stipulated that "the [c]ourt should construe the [m]otion [to dismiss] as being directed to Plaintiff's . . . [a]mended [c]omplaint." (Docket Entry No. 32).

[4] The facts described are based on the allegations in the third amended complaint. (Docket Entry No. 53).

[5] Lone Star and Emser Tile do not disagree that California law applies to the contract claims. (*Compare* Docket Entry Nos. 28, 31, *with* Docket Entry No. 30). After a careful examination of the record and of the applicable law, the court applies California law to the contract claims.

The California Supreme Court has explained that "a review of th[e] court's third party beneficiary decisions reveals that [the] court has carefully examined the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to, in order to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. All three elements must be satisfied to permit the third party action to go forward." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 829–30 (2019) (footnote omitted).

in the Austin area." (*Id.* ¶ 3). Homeowners subsequently complained "that their floor tile was cracking, tenting, and spontaneously separating from the concrete substrate (i.e.[,] foundation) of their homes." (*Id.* ¶ 4). Lone Star settled some homeowners' claims with a lump sum payment and resolved other claims by replacing the tiles. (*Id.* ¶ 5). Lone Star "received an assignment of the claims of affected homeowners[.]" (*Id.*). Although Emser had initially agreed to contribute to replacing the defective tiles or to reimburse Lone Star, Emser allegedly "refused" to do so after January 2024. (*Id.* ¶ 6). Lone Star alleges that it incurred at least $1,263,208.60 in out-of-pocket costs "as a result of [Emser's] defective tile." (*Id.* ¶ 7). The core of Lone Star's claims is for Emser's breach of contract "by (a) supplying defective tile . . . ; (b) failing to repair and/or replace the defective tile . . . ; and/or (c) refusing to reimburse KB Home . . . all repair and/or settlement costs incurred or advanced despite repeated demands . . . ." (*See id.* ¶¶ 9–14; *compare id.*, *with* ¶¶ 15–51).

## II. Subject Matter Jurisdiction

"As always, jurisdiction first." *Calogero v. Shows, Cali & Walsh, L.L.P.*, 95 F.4th 951, 958 (5th Cir. 2024) (citation omitted). Courts "have an independent obligation to assess subject matter jurisdiction before exercising the judicial power of the United States." *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 407 (5th Cir. 2023) (citation omitted). "Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." *Id.* (citation omitted).

This suit is filed under 28 U.S.C. § 1332. (*See* Docket Entry No. 53 at 1–2). "[T]he Supreme Court [has] established the rule of complete diversity for cases arising under 28 U.S.C. § 1332." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008) (citation omitted). "Complete diversity 'requires that all persons on one side of the controversy be citizens of different

states than all persons on the other side.'" *Id.* (citation omitted). "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). "[T]he citizenship of a[n] LLC is determined by the citizenship of all of its members." *Harvey*, 542 F.3d at 1080. "To establish diversity jurisdiction in a suit by or against an LLC, a party 'must specifically allege the citizenship of every member of every LLC.'" *SXSW, L.L.C.*, 83 F.4th at 408. "For natural persons, § 1332 citizenship is determined by domicile, which requires residency plus an intent to make the place of residency one's permanent home." *Id.* at 407. "For diversity jurisdiction, [courts] look to citizenship at the time the complaint was filed." *Id.* at 408 (citation omitted); *see also* 13E Charles Alan Wright & Arthur R. Miller, FED. PRAC. AND PROC. CIV. § 3608 (noting that there is a "brightline policy of determining diversity jurisdiction as of the date of commencement of the action").

The third amended complaint, (Docket Entry No. 53), is the operative pleading. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)); *see also id.* at 35–36 ("So changes in parties, or changes in claims, effectively remake the suit. And that includes its jurisdictional basis: The reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction.").

The parties have made "'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." *See SXSW, L.L.C.*, 83 F.4th at 407; (*see also* Docket Entry No. 46 (listing all the members of Emser Tile, LLC and noting that they were all California citizens on the date the action commenced, November 4, 2025); Docket Entry No. 53 at 1 (describing Lone Star as "a

Texas corporation with its principal place of business in San Antonio, Texas")). There is complete diversity between the two parties. *See SXSW, L.L.C.*, 83 F.4th at 408.

**III. The Legal Standard for a Motion to Dismiss**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.'" *Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quotation marks omitted, alterations adopted) (quoting *Twombly*, 550 U.S. at 558).

## IV. Analysis

Lone Star "amended [its] complaint while . . . [Emser Tile]'s motion [to dismiss] was pending." *See Rountree v. Dyson*, 892 F.3d 681, 683 (5th Cir. 2018); (*compare* Docket Entry No. 28, *with* Docket Entry Nos. 29, 53). "[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending." *Rountree*, 892 F.3d at 683 (citing 6 Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. CIV. § 1476 (3d ed. Apr. 2018)). "Rather, '[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.'" *Id.* at 683–84 (citations omitted). Under these circumstances, Emser need not move again for dismissal. *See id.*

### A. Choice of Law

Emser argues that the "[c]ourt should apply California law to Count Four (Breach of the Implied Warranty of Fitness for a Particular Purpose), Count Five (Breach of the Implied Warranty of Merchantability), and Count Ten (Attorneys' Fees) and otherwise apply the law of Texas." (Docket Entry No. 28 at 12). Emser suggests that the court "apply California law to [the] contract[] claims . . . and Texas law to [the] tort claims . . . ." (Docket Entry No. 31 at 7). Emser notes that the supply contract "contains a choice-of-law provision which provides: 'This Agreement will be construed in accordance with and governed by the laws of the State of California, excluding its conflict of law principles.'" (Docket Entry No. 28 at 12 (citing Docket Entry No. 25-1 at ¶ 9(j)); Docket Entry No. 28 at 12 (noting that "both Emser and KB [Home] Service [Company] are headquartered in California"); Docket Entry No. 53-1 (noting that KB Home Service Company and Emser Tile have "principal office[s]" in California)). Rather than refute Emser's choice-of-

law arguments, Lone Star also applies California law to the contract claims and applies Texas law to the tort claims. (*See generally* Docket Entry No. 30).

After a detailed and thorough examination of the record and of the applicable law, the court applies California law to the contract claims and Texas law to the tort claims. The reasons for this ruling are set out below.

### 1. The Contract Claims

"In diversity jurisdiction cases, such as this one, a district court generally applies the choice-of-law rules of the forum state." *Ron Hoover Cos., Inc. v. Yamaha Motor Corp., USA*, No. 2:18-CV-205, 2020 WL 11035919, at *7 (S.D. Tex. Jan. 9, 2020) (citation omitted). "Thus, Texas law determines what law applies to each claim." *Id.* (citation omitted). "Under Texas law, courts generally enforce a contract's choice-of-law provisions." *Id.* (citing *Exxon Mobil Corp. v. Drennen*, 452 S.W.3d 319, 324 (Tex. 2014) ("We first note that Texas law recognizes the 'party autonomy rule' that parties can agree to be governed by the law of another state.")). "When the state of the chosen law has some substantial relationship to the parties or the contract, the parties will be held to have had a reasonable basis for their choice. This will be the case, for example, when this state is that where . . . one of the parties is domiciled or has his principal place of business." *Id.* (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. f).

In the present case, KB Home Service Company LLC and Emser Tile "chose the law of California to govern their contract." *See id.*, at *8. Emser Tile has its principal office in California. (Docket Entry No. 53-1). The court concludes that the agreement "should be construed under California law." *See Ron Hoover*, 2020 WL 11035919, at *8. The court applies California law to

the breach-of-contract claim (count one); the implied-warranty claims (counts four and five); and the attorneys' fees claim (count ten). (*See* Docket Entry No. 28 at 12).

### 2. The Tort Claims

The remaining choice-of-law issue is whether Texas law applies to the tort claims at issue. (Docket Entry No. 28). "In the Fifth Circuit, a choice-of-law clause dictating only that the parties' agreement is to 'be construed under the laws of the State of California' is considered to be narrow." *Ron Hoover*, 2020 WL 11035919, at *8.

The choice-of-law provision here is narrow. (Docket Entry No. 28 at 12 (citing Docket Entry No. 25-1 at ¶ 9(j) ("This Agreement will be construed in accordance with and governed by the laws of the State of California, excluding its conflict of law principles."))). "[W]hen dealing with narrow choice-of-law provisions, the [c]ourt must look to Texas choice-of-law rules to determine which law applies to [Lone Star]'s claim[s] for" negligence and strict products liability. *See Ron Hoover*, 2020 WL 11035919, at *8. "In Texas, where the parties have not agreed to the application of law to a particular issue, the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Id.* (citation omitted). "Relevant contacts to be taken into account include: '(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties[;] and (d) the place where the relationship, if any, between the parties is centered." *Id.* (citing, *inter alia*, RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)).

"Consideration of the relevant Restatement factors demonstrates that Texas law should govern" Lone Star's claims for negligence; strict products liability; fraudulent misrepresentation; and equitable indemnification. *See, e.g.*, *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d

719, 728 (5th Cir. 2003); *Indep. Fin. Grp., LLC v. Quest Trust Co.*, No. H-21-2125, 2022 WL 18460889 (S.D. Tex. Dec. 21, 2022); (Docket Entry Nos. 25, 29, 53). "Many factors weigh in favor of the application of Texas law." *See Benchmark Elecs., Inc.*, 343 F.3d at 728. Although Emser Tile "is a California limited liability company with its principal place of business in Los Angeles, California[,]" Lone Star is "a Texas corporation with its principal place of business in San Antonio, Texas." Lone Star "purchased and installed [Emser's] Albero and Uddo tiles in 498 homes in the Houston area, 34 homes in the San Antonio area, and 91 homes in the Austin area." (Docket Entry No. 53 ¶ 3). The Texas homeowners complained "that their floor tile was cracking, tenting, and spontaneously separating from the concrete substrate (i.e.[,] foundation) of their homes[,]" all in Texas. (*See id.* ¶ 3–4).

"The alleged injur[ies] occurred to [Lone Star and its customers] in Texas, and [the injuries] arose from misrepresentations made in or directed to this state. Texas clearly has an interest in protecting its businesses from fraudulent activities." *See Benchmark Elecs., Inc.*, 343 F.3d at 728; (*see generally* Docket Entry No. 53). "Texas has the 'most significant relationship'" to [Lone Star]'s claims for negligence; strict products liability; fraudulent misrepresentation and concealment; and equitable indemnification. *See Benchmark Elecs., Inc.*, 343 F.3d at 728; *see, e.g.*, *Indep. Fin. Grp.*, 2022 WL 18460889, at *8 (applying the most-significant-relationship test and "find[ing] that Texas law applie[d] to equitable indemnity" and to "all the other claims in the case").

* * *

The court addresses the merits of the motion to dismiss, applying California law to the contract claims and Texas law to the tort claims.

**B. The Negligence Claim**

Lone Star alleges that "Emser was negligent in supplying . . . defective . . . tile"; that "Emser had a duty to KB Home Lone Star and the homeowners[] to supply defective[-]free tile"; that the "defective . . . tile resulted in damage to other component parts of the homes"; and that Emser "fail[ed] to repair or replace the defective tile in accordance with the terms of its [c]ontract." (Docket Entry No. 53 ¶ 20–24 (count three)). Emser argues that Lone Star's negligence claim is "precluded by the economic loss doctrine" because "it is . . . a breach of contract claim repackaged as a tort claim" and that "[t]he parties' relationship was created—and is now governed—by the [s]upply [c]ontract, which provides for contractual remedies in the event of a breach . . . ." (Docket Entry No. 28 at 8, 10-11).

"To prevail on a common law negligence claim, a plaintiff must be able to prove three elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach." *Gann v. Anheuser-Busch, Inc.*, 394 S.W.3d 83, 88 (Tex. App. 2012) (citations omitted). "Under Texas law, the economic loss rule 'generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 930 (N.D. Tex. 2014) (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). "In operation, the rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." *Lamar Homes*, 242 S.W.3d at 12–13 (citation omitted). The economic-loss doctrine can apply when "[t]he parties are sophisticated, commercial actors that actually did negotiate over the allocation of risk." *Golden Spread Elec. Coop., Inc. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 812 (5th Cir. 2020); *see also id.* (noting that "the Texas

Supreme Court reasoned, '[W]e think the availability of contractual remedies must preclude tort recovery in the situation generally because . . . 'clarity allows parties to do business on a surer footing''" (citations omitted)).

"As a prerequisite to asserting a claim of negligence, there must be a violation of a duty imposed by law independent of any contract." *Gen. Elec. Co. v. M&M X-Press Serv., Ltd.*, No. H-07-02175, 2008 WL 4747211, at *3 (S.D. Tex. Oct. 27, 2008) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.")); *see also Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." (citations omitted)). "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Johnson*, 999 F. Supp. 2d at 930–31 (citations omitted).

The gravamen of Lone Star's complaint is for "benefit-of-the-bargain damages." *See El Paso Disposal, LP v. Ecube Labs Co.*, No. EP-24-CV-97-KC, 2025 WL 1766310, at *12 (W.D. Tex. June 26, 2025) ("[W]hen a plaintiff merely seeks 'benefit-of-the-bargain damages,' their claim sounds solely in contract rather than tort, and the economic loss doctrine applies." (citation omitted)); *see also Lamar Homes*, 242 S.W.3d at 12–13 (citation omitted); (Docket Entry No. 28 at 10-11 (positing that Lone Star "only identifies injuries contemplated by the [s]upply [c]ontract and sought in its breach of contract claim . . . ." (citing Docket Entry No. 25 ¶¶ 14–19))); (*compare* Docket Entry No. 28, *with* Docket Entry No. 53 ¶¶ 9–14).

Lone Star argues for the first time in its response that "[t]he defective tile caused independent injuries including consequential physical damage to the homeowners' surrounding property, including damage to the sheetrock and baseboards," (Docket Entry No. 30 at 7). "[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011). "On a Rule 12(b)(6) motion, a district court generally 'must limit itself to the content of the pleadings, including attachments thereto.'" *See Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). Lone Star attached the supply contract to its third amended complaint. (Docket Entry Nos. 53, 53-1). The supply contract's indemnity provision contemplates "damage to any Home" or "damage to any personal property within any Home," which encompasses "damage to the sheetrock and baseboards." (*Compare* Docket Entry No. 53-1 ¶ 5, *with* Docket Entry No. 30 at 7).

Lone Star's reliance on *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011), is unavailing, for several reasons. (*See* Docket Entry No. 30 at 7–10). First, the court in *Sharyland* stated that "[t]he [economic loss] rule cannot apply without even remote contractual privity, merely because one of those parties had a construction contract with a third party, and when the contracting party causes a loss *unrelated* to its contract." 354 S.W.3d at 420 (emphasis added). In the present case, however, the contract contemplates the harm alleged—"damage to any Home" and ""damage to any personal property within any Home." (*Compare* Docket Entry No. 53-1, *with* Docket Entry No. 53). Second, the court in *Sharyland* noted that "we have never held that [the economic loss rule] precludes recovery completely between contractual strangers in a case *not involving a defective product* . . . ." 354 S.W.3d at 418 (emphasis added). But here,

Lone Star's core claims for breach of contract are centered around "a defective product"—Emser's tiles. *Cf. id.*; (Docket Entry No. 53).

Third, the lack of privity between Lone Star and Emser Tile does not preclude applying the economic-loss rule, even under *Sharyland*'s framework. *See* 354 S.W.3d at 418 (noting that the Texas Supreme court has "applied this rule even to parties not in privity (*e.g.* a remote manufacturer and a consumer)" (citing *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex. 1977))). Fourth, Lone Star has not adequately alleged the "breach of an independent duty." *Compare Sharyland*, 354 S.W.3d at 419, *with Lamar Homes*, 242 S.W.3d at 12–13 ("In operation, the [economic loss] rule restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence." (citation omitted)). Fifth, *Sharyland*'s application of Texas law in ascertaining third-party-beneficiary status carries less force here because this court applies California law— including the applicable third-party-beneficiary test— to the contract claims. *Compare Sharyland*, 354 S.W.3d at 420–21, *with Goonewardene*, 6 Cal. 5th at 829–30 (applying California's three-element test for third-party-beneficiary actions).

Lone Star's "assignments of claims from the homeowners" argument fares no better. (*Cf.* Docket Entry No. 30 at 9). Lone Star cites no case law for the proposition that an assignment of claims is sufficient to prevent the application of the economic loss doctrine when a "[p]laintiff . . . seek[s] contractual damages [under] the [s]upply [c]ontract for th[e] . . . same homeowner 'Warranty Claims.'" (*Compare id.*, *with* Docket Entry No. 31 at 11; Docket Entry No. 53 ¶ 23 (alleging that Emser "fail[ed] to reimburse KB Home Lone Star for costs it incurred to repair and/or settle homeowner Warranty Claims"); Docket Entry No. 53-1 ¶ 7 (titled "Warranty")). Instead, courts have often held that "tort claim[s] cannot proceed as a matter of law" when "[t]he

injury and damages allegations for the tort and contract theories are the same." *See, e.g.*, *AXA Art Americas Corp. v. Pub. Storage*, 208 F. Supp. 3d 820, 827 (S.D. Tex. 2016); *see also id.* (applying the economic-loss doctrine when the insurance company "s[ought] the same amount as compensation for the loss of the stolen artwork" and "[t]he subject of the contract between [the defendant] and the [insureds] was the storage of the artwork that was stolen").

Lone Star's negligence claim, barred by the economic-loss doctrine, is dismissed, with prejudice because amendment would be futile.

**C. The Implied-Warranty Claims**

Lone Star alleges breach of an implied warranty of fitness for a particular purpose and breach of an implied warranty of merchantability. (Docket Entry No. 53 ¶ 25–39 (counts four and five); *see also id.* (incorporating the allegations from the complaint's earlier paragraphs)). Emser argues that "the parties properly disclaimed all implied warranties under the [s]upply [c]ontract, pursuant to California law." (Docket Entry No. 28 at 16).

"A company may disclaim the implied warranty of merchantability so long as the disclaimer 'mentions[] merchantability' and is 'conspicuous.'" *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (citing CAL. COM. CODE § 2316(2)). "A company may disclaim the implied warranty of fitness as long as the disclaimer is in writing and 'conspicuous.'" *Id.* "[A]ll implied warranties are excluded by . . . language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." *Id.* (citing CAL. COM. CODE § 2316(3)(a)).

The supply contract provides,

> EXCEPT TO THE EXTENT SET FORTH IN THIS AGREEMENT, NEITHER PARTY MAKES, AND BOTH PARTIES DISCLAIM TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED OR ARISING BY CUSTOM OR TRADE

> USAGE, WITH RESPECT TO THE PRODUCTS SUPPLIED UNDER THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.

(Docket Entry No. 53-1 ¶ 7). The provision is in writing, using capitalized text. It is conspicuous, and it refers to both "merchantability" and "fitness for any particular purpose." The disclaimer requirements under California law are met. *See Minkler*, 65 F. Supp. at 819.

Lone Star does not dispute that this provision satisfies California's disclaimer requirements. (*See generally* Docket Entry No. 30). Rather, Lone Star argues that the implied warranty claims "are ple[a]d[ed] in anticipation of Emser's position that the tile was not supplied [under] . . . the [n]ational [s]upply [a]greement, but instead under a separate agreement with installers." (Docket Entry No. 30 at 10).

The implied-warranty claims are dismissed, without prejudice to re-urging if Emser argues that the tile was not supplied under the national supply agreement.

### D. The Equitable Indemnification Claim

Lone Star asserts a claim for equitable indemnification in its first amended complaint. (Docket Entry No. 25 ¶¶ 46–50 (count six)). Emser Tile moved to dismiss, arguing that both Texas law and the express indemnification provision preclude the equitable indemnification claim. (*Compare* Docket Entry No. 28, *with* Docket Entry No. 25; *see* Docket Entry No. 28 at 17–20 (citing Docket Entry No. 25-1 ¶ 5)). While the motion to dismiss was pending, Lone Star filed amended complaints, removing the claim for equitable indemnification, (Docket Entry Nos. 29, 53). Lone Star does not refute Emser's arguments or provide additional facts to warrant a contrary conclusion. (*See generally* Docket Entry No. 30).

The equitable indemnification claim is dismissed, with prejudice because amendment would be futile. *See Lee v. Forest River, Inc.*, No. 17-2103, 2017 WL 6624029, at *1 (E.D. La.

Dec. 28, 2017) ("Because plaintiff was provided an opportunity to cure the deficiencies in [the] complaint and failed to do so, the Court dismisses these claims with prejudice." (*citing Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) ("[A]n affirmance of the district court's dismissal of [the] municipal liability claims is required. This is because a plaintiff is not entitled to 'an opportunity to satisfy the heightened pleading requirements' of municipal liability cases when [the plaintiff] simply 'declares the adequacy of [the] complaint' in 'response to the motion to dismiss.'"))).

**E. The Fraudulent-Misrepresentation Claim**

Similarly, in its first amended complaint, Lone Star alleges a claim for fraudulent misrepresentation and concealment. (Docket Entry No. 25 ¶¶ 51–58 (count seven)). Emser moved to dismiss, arguing that Lone Star's "claim is no more than a series of legal conclusions." (Docket Entry No. 28 at 20–23 (citing *Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 3:22-CV-2805-L-BH, 2023 WL 5022287, at *7 (N.D. Tex. July 21, 2023) ("[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent"))); *see also Ison-Newsome*, 2023 WL 5022287, at *7 ("A motion to dismiss for failure to plead fraud with particularity under Rule 9(b) is treated the same as a Rule 12(b)(6) motion to dismiss for failure to state a claim." (citations omitted)). Lone Star has not refuted Emser's argument or identified facts that warrant a contrary conclusion. (*See generally* Docket Entry No. 30). Instead, Lone Star removed the fraudulent-misrepresentation claim. (*Compare* Docket Entry No. 25, *with* Docket Entry Nos. 29, 53).

The claim for fraudulent misrepresentation and concealment is dismissed, with prejudice because amendment would be futile. *See, e.g.*, *Lee*, 2017 WL 6624029, at *1; *Spiller*, 130 F.3d at 167.

**F. The Strict-Products-Liability Claim**

Lone Star asserts claims for strict products liability. (Docket Entry No. 53 ¶¶ 44–49 (count nine)). Emser argues that the claims are barred by the economic-loss doctrine and that Lone Star cannot assert a strict-products-liability claim for damages to property owned by a third party. (Docket Entry No. 28 at 23–27; Docket Entry No. 31 at 12–16). In response, Lone Star argues that Emser "caused physical damage to . . . property distinct from the tile itself" and that Lone Star "acquired all of [the homeowners'] rights" "[u]pon receiving the assignments." (Docket Entry No. 30 at 10–12). Emser replies that "the purported assignments do not confer a direct property interest on [Lone Star]." (Docket Entry No. 31 at 15 (citation modified)).

"One who sells any product in a defective condition unreasonably dangerous to the user or consumer or [t]o his property is subject to liability for physical harm thereby caused to the ultimate user of consumer, or [t]o his property." *Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 325 (Tex. 1978) (quoting RESTATEMENT (SECOND) OF TORTS, § 402(A)). "[T]he Texas Supreme Court [has] emphasized that the damage to 'other property' must be to the plaintiff's property to state a claim for strict product liability[.]" *American Eagle Ins. Co. v. United Techs. Corp.*, 48 F.3d 142, 145 (5th Cir. 1995); *see also id.* (holding that "the district court properly granted summary judgment on Appellants' strict product liability claim" because "the ground damage occurred to a third-party's property for which the Appellants subsequently became legally responsible" and "Appellants admitted that it owned no property, other than the aircraft, that was damaged as a result of the crash"); *see also Nat'l Oilwell Varco, L.P. v. Elite Coil Tubing Sols.,*

*LLC*, No. 4:13-cv-00374, 2013 WL 4735574, at *4 (S.D. Tex. Sept. 3, 2013) ("[D]amage to property owned by a third party for which a party subsequently becomes legally responsible does not constitute 'other property.'" (citations omitted)).

First, the strict-products-liability claim is barred by the economic-loss doctrine. *See supra*, at 10–14. Second, Lone Star has not presented, and the court has not found, cases holding that assigning a claim overcomes the rule that "damage to property owned by a third party for which a party subsequently becomes legally responsible does not constitute 'other property.'" *Compare Nat'l Oilwell Varco, L.P.*, 2013 WL 4735574, at *4, *with* Docket Entry No. 30; (*cf.* Docket Entry No. 53 ¶ 49 (alleging that "[h]omeowners with standing to assert strict liability claims have . . . assigned those claims to KB Home Lone Star" and that "KB Home Lone Star therefore . . . asserts strict product liability claims against Emser")). The rule is concerned with "the legal effect, not the legal mechanism," by which a party "becomes legally responsible." *See Nat'l Oilwell Varco, L.P.*, 2013 WL 4735574, at *4; (Docket Entry No. 31 at 16).

The strict-products-liability claim is dismissed, with prejudice because amendment would be futile.

### G. The Attorneys' Fees Claim

Lone Star asserts a claim for attorneys' fees as a separate count. (Docket Entry No. 53 ¶ 50–51 (count ten) (citing Docket Entry No. 53-1 ¶ 5)). "Attorneys' fees, however, are a remedy, not a cause of action." *Collins v. County of Monterey*, No. 19-cv-01214-NC, 2019 WL 8263430, at *4 (N.D. Cal. Oct. 7, 2019); *see also Compu-Link Corp. v. PHH Mortg. Corp.*, No. 2:22-cv-

00983-KJM-KJN, 2022 WL 17978409, at *3 (E.D. Cal. Dec. 28, 2022) ("Federal district courts do not ordinarily permit independent claims for attorneys' fees and costs." (citation omitted)).

The motion to dismiss the attorneys' fees claim is granted, in part, without prejudice to re-urging. Lone Star "may move for attorneys' fees upon conclusion of this case, if warranted." *See, e.g.*, *Collins*, 2019 WL 8263430, at *4.

## V. Conclusion

The motion to dismiss, (Docket Entry No. 28), is granted in part and denied in part. The claims for negligence; equitable indemnification; fraudulent misrepresentation and concealment; and strict products liability are dismissed, with prejudice because amendment would be futile. The claim for attorneys' fees is dismissed, without prejudice; Lone Star may move for attorneys' fees, if appropriate, at the conclusion of this case. The implied-warranty claims are dismissed, without prejudice to re-urging if Emser argues that the tile was not supplied under the national supply agreement.

SIGNED on November 17, 2026, at Houston, Texas.

Lee H. Rosenthal
Senior United States District Judge